```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
HECTOR RINCON,
                                                             :
                            Petitioner,
                                                             :
        -against-                                                REPORT and RECOMMENDATION
                                                             :
                                                                 08 Civ. 3776 (JSR)(KNF)
WARDEN,                                                      :

                            Respondent.                      :

------------------------------------------------------------ X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE JED S. RAKOFF, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Before the Court is Hector Rincon's ("Rincon") pro se petition for a writ of habeas corpus made pursuant to 28 U.S.C. § 2254. In his petition, Rincon contends his confinement by New York State is unlawful because: (1) the trial court refused to allow defense counsel to exercise a peremptory challenge, during voir dire; (2) the trial court erred in permitting the jury to listen to an audiotape, which was "entirely in [S]panish," without instructing the jurors "not to use their own knowledge of [S]panish to translate the [conversation(s) on the audiotape,] in violation of [Rincon's] right to confront all witnesses"; (3) he was adjudicated a second-felony offender erroneously, because the prosecution failed to submit "proof" of Rincon's prior felony conviction; and (4) his sentence, of "eight years to life [imprisonment] on [his] A-II felony" conviction for second-degree criminal sale of a controlled substance, was excessive.

Respondent opposes the petitioner's application, which is analyzed below.

1

## II. BACKGROUND

In January 2003, the petitioner was introduced to undercover officers ("UOs") 7341 and 149. Upon their first meeting, UO 7341 informed the petitioner he wished to purchase a gun, and the petitioner responded that he would contact UO 7341 when he located a gun for sale. On January 6, 2003, Rincon contacted UO 7341 and asked him to meet Rincon at an Off Track Betting parlor ("OTB parlor"), located within the George Washington Bridge bus terminal, in Northern Manhattan. The UOs met Rincon, who stated he had a gun to sell. Rincon and the UOs drove to "570 204th Street," where Rincon retrieved a .32 caliber revolver and twelve ".32 caliber rounds," which were sold to UO 7341 for $360.

On January 9, 2003, the UOs visited the OTB parlor, and asked if Rincon would sell them cocaine. Rincon spoke with Rafael Tejeda-Guerra ("Tejeda-Guerra"), and the four men left the bus terminal and ultimately drove to West 187th Street and St. Nicholas Avenue, where Tejeda-Guerra knew someone willing to sell 20 grams of cocaine for $540; the UOs purchased the cocaine and drove away. After this sale, Rincon contacted UO 7341 to discuss potential gun purchases. On March 3, 2003, the UOs met Rincon at the OTB parlor. UO 149 stated that he wanted to purchase 70 grams of cocaine. Rincon spoke with Tejeda-Guerra. Thereafter, Tejeda-Guerra informed the UOs that he did not want to "take any chances," by selling such a large quantity of cocaine. The UOs exited the bus terminal and informed "field team" officers that Rincon and Tejeda-Guerra were inside the OTB parlor. Thereafter, field team officers arrested Rincon and Tejeda-Guerra.

Following the petitioner's arrest, he was indicted, and proceeded to trial, by jury, on October 5, 2004. During the "second round" of voir dire, three jurors were selected to serve on

the jury, and, as the third panel of venirepersons entered the courtroom, Rincon's counsel asked for permission to approach the bench. The request was denied, because Rincon had not waived his Antommarchi rights.[1] After the third round of venirepersons left the courtroom, defense counsel informed the court that she had "an issue" with the jurors selected from the second round of voir dire. Specifically, Rincon's counsel notified the court she had a misunderstanding with Rincon over the use of peremptory challenges, and that there were two additional jurors that Rincon "did not want." Over the prosecution's objection, the trial court determined that the parties would "pick two more jurors and [defense counsel will] use two more challenges."

The prosecution challenged, peremptorily, four jurors on the third panel of venirepersons. At that point, Rincon's counsel requested "a few minutes" to speak with Rincon. As they conferred, with the aid of an interpreter, the trial court inquired of Rincon's counsel, "are you ready," and counsel responded: "getting there Judge." After speaking further with Rincon, defense counsel challenged two jurors peremptorily, and the court announced that the remaining seats on the jury would "go to the first eight." Rincon's counsel then stated "[t]here is one I forgot," and requested that juror number six be excluded. The court responded, "Mr. Iorio. So Sullivan is the eighth juror." The court began to discuss alternate jurors, when defense counsel stated that her "client doesn't want number 11, Ms. Lembert [("Lembert")]," who had already been named to the jury. The following colloquy ensued:

> THE COURT: You know what? You can't keep doing it.
> [DEFENSE COUNSEL]: It's the last time.

---

[1] In People v. Antommarchi, 80 N.Y.2d 247, 250, 590 N.Y.S.2d 33, 35 (1992), the New York Court of Appeals determined that a criminal defendant is entitled to be present at sidebar conferences conducted during voir dire.

3

>THE COURT: No, that's it, you can't do it. I think that I've given you a lot of leeway on this.
>[DEFENSE COUNSEL]: Well, it's hard communicating.
>THE COURT: I'm sorry, that's it. . . .

Defense counsel did not lodge an objection to the inclusion of Lembert on the jury. Before the jurors were administered their oath, the court inquired whether the "[r]emaining jurors [were] satisfactory to the defendant," and defense counsel responded "[y]es."

A detective who participated in the petitioner's arrest and the UOs testified for the prosecution, at the trial. During UO 149's testimony, an audiotape recording made surreptitiously while UO 149, Rincon, and Tejeda-Guerra were "involved in th[e] drug transaction on January 9[,] . . . 2003," was played for the jurors. The participants in the conversation(s) captured on the audiotape spoke in Spanish exclusively. Defense counsel did not object to the audiotape's admission into evidence. However, she objected to having UO 149 state, in English, what was being said during the recorded conversation(s). After a sidebar discussion with the court, defense counsel agreed that it was "all right" for UO 149 to say "what he thinks he hears on this tape," without the prosecution attempting to have him qualified as an "expert in translation." Thereafter, UO 149 stated, in relevant part, that the following comments were captured on the audiotape: (1) Rincon stated "you have to make sure that it is not an undercover officer" when making transactions; (2) UO 149 asked whether "the cocaine" was "cooked"; (3) Rincon responded that, if UO 149 cooked the cocaine, he "would be able to get more out of it"; (4) Rincon talked about selling cocaine and discussed the difference between "high class and crack which is very additive [sic]"; and (5) Rincon stated the cocaine being sold to UO 149 "is going to be costing $27.00 a gram for a total of 540."

Rincon did not present any evidence to the jury in defense of the charges lodged against

4

him. After closing arguments were made, the jury was instructed, inter alia, that the "evidence you must consider is the testimony of the witnesses and any stipulations" made by the parties.

On October 13, 2004, the jury began deliberating. Rincon, who had been at liberty, did not attend the court proceedings on that day. The court ordered that an inquiry be made into whether Rincon had been hospitalized or incarcerated and, thereafter, conducted an in abstentia hearing. Rincon's counsel advised the court she did not have a telephone number at which Rincon could be reached. Phillip Lambert, a "trial part assistant from the Special Narcotics [O]ffice," which was prosecuting the criminal action, testified that he "called the Department of Correction, New York City Department of [] Corrections, several hospitals and the morgue," and was unable to locate Rincon. At the conclusion of the hearing, the court stated that, "reasonable inquiry has been made to assume that [Rincon's] absence is deliberate and we will continue with [the] trial in the defendant's absence."

During deliberations, the jurors requested, inter alia, that "the testimony about the conversation in the car during the drug transaction" be read to them, and that they be allowed to listen to the portion of the audiotape pertaining to the "quality of the drugs"; both requests were granted.

On October 13, 2004, the jury found Rincon guilty for one count of second-degree criminal sale of a controlled substance and one count of third-degree criminal sale of a firearm. On November 24, 2004, a sentencing proceeding was held. The court indicated that, although Rincon was still a fugitive, it was ready to sentence him. The court acknowledged that the "district attorney did file a statement of predicate felony conviction against the defendant, which states that on 9/23[/]1994, in the Supreme Court of Queens County, [in] the State of New York, . . . he was convicted of the felony of criminal possession of a weapon in the third degree." The court

5

reasoned that Rincon "[is] a predicate," owing to his failure to "[confirm] or [disaffirm]" the prosecution's statement of predicate felony conviction, because "[he] willfully absented himself from the proceedings." Rincon's counsel objected to the predicate felony conviction statement. However, after hearing arguments from the prosecutor and defense counsel, the court proceeded to sentence Rincon to an indeterminate term of eight years to life imprisonment for his second-degree criminal sale of a controlled substance conviction, and two to four years imprisonment for his third-degree criminal sale of a firearm conviction ("2004 conviction"). The court directed that the terms of imprisonment be served concurrently.

In 2005, Rincon was arrested, charged with bail jumping and began serving his sentence for his 2004 conviction. In August 2005, Rincon pleaded guilty to one count of second-degree bail jumping and was sentenced to one and one-half to three years imprisonment.

By a motion dated September 28, 2005, Rincon sought to vacate his 2004 conviction, pursuant to New York Criminal Procedure Law ("CPL") § 440.10, based upon a claim that his trial counsel rendered ineffective assistance to him, by failing to advise him to plead guilty. On February 6, 2006, the motion was denied. In March 2006, Rincon sought leave to appeal from the denial of his CPL § 440.10 motion. In May 2006, the New York State Supreme Court, Appellate Division, First Department, denied this request.

On April 24, 2006, Rincon filed a motion to be resentenced, pursuant to the "newly enacted [New York] Penal Law [("NYPL")] § 70.71." In support of the motion, Rincon asserted he was eligible for resentencing, under the "2005 Drug Law Reform Act" ("DLRA"), and should be resentenced to the minimum sentence allowable under DLRA: a six-year determinate term of imprisonment. On July 17, 2006, the motion court issued an order advising that, "unless [Rincon]

6

withdraws his application [for resentencing] or appeals from this order, [the court] will vacate [Rincon's] sentence of eight years to life and impose a determinate prison term of eight years." The order also indicated the eight-year determinate sentence "would be served concurrently with the terms [Rincon] received on his gun and bail jumping convictions." Rincon elected to file an appeal; it was later consolidated with his direct appeal from the judgment of conviction.

On direct appeal, Rincon, through counsel, raised the following claims: (1) the trial court erred by refusing to allow defense counsel to exercise a peremptory challenge against Lembert; (2) the trial court erred by failing to instruct the jurors not to use their personal knowledge of Spanish to translate the conversation(s) appearing on the audiotape played for them during the trial; (3) he was erroneously adjudicated a second-felony offender, because the prosecution did not provide proof of Rincon's prior felony conviction; and (4) the sentence of eight years to life imprisonment, for criminal sale of a controlled substance, was excessive, and he was entitled to a hearing respecting his application for resentencing.

On May 31, 2007, the New York State Supreme Court, Appellate Division, First Department, affirmed: (i) the petitioner's conviction unanimously, and (ii) the July 17, 2006 order through which Rincon was resentenced to a determinate term of eight years imprisonment, for his conviction for second-degree criminal sale of a controlled substance. See People v. Rincon, 40 A.D.3d 538, 539, 837 N.Y.S.2d 82, 83 (App. Div. 1st Dep't 2007). The Appellate Division found that: (1) the trial court "properly rejected defendant's belated attempt to make a peremptory challenge to a juror who had already been accepted by both sides, but who had not yet been sworn"; (2) Rincon did not preserve, for appellate review, his claims "concerning the playing for the jury of a Spanish-language audiotape and his in abstentia second felony offender adjudication,"

7

and, furthermore, if these claims were reviewed, they would be rejected; and (3) no basis for an additional reduction in Rincon's sentence, under DLRA, exists. Id. at 539, 837 N.Y.S.2d at 83. The petitioner applied for leave to appeal to the New York Court of Appeals from the determination of the Appellate Division. On August 22, 2007, that application was denied. See People v. Rincon, 9 N.Y.3d 880, 842 N.Y.S.2d 792 (2007).

In December 2007, Rincon filed a second motion pursuant to CPL § 440.10, contending: (1) the jury's verdict was not unanimous; (2) the audiotape played for the jury was inaudible; and (3) the audiotape was not reviewed by his trial counsel, until three days before the trial commenced. This motion was consolidated with a separate motion Rincon made for resentencing, as a first-time felony offender, on the ground his plea colloquy, for his 1994 Queens County conviction, was faulty. In April 2008, the New York State Supreme Court, New York County, denied Rincon's second CPL § 440.10 motion, pursuant to CPL § 440.10(2)(c), as the facts supporting his challenges to the unanimity of the verdict and the audibility of the tape were apparent from the face of the record and, accordingly, should have been raised on direct appeal. Rincon's claim, that his trial attorney did not review the audiotape until three days before his trial commenced, was denied, pursuant to CPL § 440.10(3)(c). The court explained that the claim should have been raised in Rincon's first CPL § 440.10 motion. The court also found that Rincon had waived any challenge to the validity of his Queens County conviction, because Rincon: (i) was given an opportunity to raise such a challenge at his bail jumping plea proceeding and did not do so; and (ii) "waived the right to contest the predicate felony statement filed by the [prosecution] by absconding from trial and failing to appear for sentencing." In April 2008, the petitioner was resentenced to a determinate term of eight years imprisonment, for his second-

degree criminal sale of a controlled substance conviction.  The instant application for a writ of habeas corpus was filed that same month.

In August 2008, Rincon filed an appeal, from the April 2008 resentencing decision, in which he alleged: (1) the trial court erred in refusing to conduct a hearing regarding Rincon's claim that his counsel rendered ineffective assistance to him, resulting in his being adjudicated a second-felony offender; and (2) his eight-year sentence was excessive and should be reduced, in the interest of justice.  The appeal is still pending.

### III. DISCUSSION

*A.  Belated Peremptory Challenge*

"Federal courts may not grant a writ of habeas corpus under § 2254 unless the prisoner 'is in custody in violation of the Constitution or laws or treaties of the United States.'"  Cousin v. Bennett, 511 F.3d 334, 339 (2d Cir. 2008) (citing 28 U.S.C. § 2254(a)).  It has been "long recognized . . . that [peremptory] challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension."  United States v. Martinez-Salazar, 528 U.S. 304, 311, 120 S. Ct. 774, 779 (2000).  The trial court's failure to honor a peremptory challenge made belatedly by Rincon's counsel is not cognizable on habeas corpus review, since peremptory challenges do not implicate the "violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

*B.  Spanish-Language Audiotape*

Generally, federal courts will not consider "a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  Coleman v. Thompson, 501 U.S. 722, 729, 111

9

S. Ct. 2546, 2553 (1991). In the case at bar, the Appellate Division refused to entertain certain claims raised by Rincon because they were not preserved for appellate review, through a timely objection in the trial court, as required under New York law. New York's contemporaneous objection rule, codified at CPL § 470.05, has been found to be a procedural bar to federal habeas corpus review of a federal claim, because it is an independent and adequate state-law ground for disposing of such claims that is "firmly established" and "regularly followed" by New York courts. Richardson v. Greene, 497 F.3d 212, 219 (2d Cir. 2007); see also Garvey v. Duncan, 485 F.3d 709, 714 (2d Cir. 2007) ("A general objection is not sufficient to preserve an issue. . . . Instead New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error."). To overcome this procedural bar, the petitioner must show cause for the default and prejudice flowing therefrom, or that failure to review a claim would result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 749-50, 111 S.Ct. at 2564-65 (internal quotations and citations omitted). A fundamental miscarriage of justice results "where a constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense." Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004) (internal quotations and citations omitted).

The petitioner raised, on direct appeal, his claim that the trial court violated his "right to confront witnesses" when it allowed jurors to listen to a Spanish-language audiotape, without barring the jurors, through a jury instruction, from relying on their own knowledge of Spanish to translate the conversation(s) on the tape for themselves. The Appellate Division determined this claim was unpreserved for appellate review. See Rincon, 40 A.D.3d at 539, 837 N.Y.S.2d at 83. While Rincon's trial counsel objected, initially, to allowing UO 149 to describe the

10

conversation(s) captured on the audiotape, counsel did not lodge an objection to the omission of an instruction to the jurors to refrain from using their own knowledge of Spanish to translate the conversation(s) on the audiotape for themselves.  In his habeas corpus petition, Rincon has not attempted to show cause and prejudice for his default, nor has he alleged a fundamental miscarriage of justice would result, if his claim were not considered.  Therefore, the petitioner's claim, that the trial court violated his right to confront witnesses, is procedurally barred, and the petitioner has failed to overcome this bar.

Even if the Court were to review the petitioner's claim, it would find it to be without merit. "The burden [on a habeas corpus petitioner] of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 1736-37 (1977).  A petitioner's burden is "especially heavy" where the alleged error is the failure to instruct the jury, since an omission is "less likely to be prejudicial than a misstatement of the law."  Id., at 155, 97 S. Ct. at 1737.  "[A] finding that the petitioner was erroneously deprived of a jury instruction to which he was entitled under state law is the first step in the determination whether that error violated the petitioner's federal due process rights."  Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001).

In the case at bar, the trial judge instructed the jurors to consider only the testimony of the witnesses and any stipulations made by the parties.  A jury is presumed to follow the instructions of the trial judge.  See Weeks v. Angelone, 528 U.S. 225, 234, 120 S. Ct. 727, 733 (2000). Therefore, it is presumed the jurors understood they were not to consider, as evidence, their own translations of the Spanish-language conversation(s) on the audiotape.  As a result, the petitioner

has not shown his federal due process rights were violated by the omission of an instruction that the jurors refrain from translating, for themselves, the Spanish-language conversation(s) on the audiotape.  See Davis, 270 F.3d at 123.

*C. Erroneous Second-Felony Offender Adjudication*

Under New York law, the procedure for determining whether a person qualifies as a "second felony offender," includes the following:

> [w]hen information available to the court or to the people prior to sentencing for a felony indicates that the defendant may have previously been subjected to a predicate felony conviction, a statement must be filed by the prosecutor before sentence is imposed setting forth the date and place of each alleged predicate felony conviction and whether the predicate felony conviction was a violent felony. . . .

CPL § 400.21(2).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991).  A claim that "the court failed to follow the procedures set forth in C.P.L. § 400.21 for sentencing second felony offenders . . . alleges [a] violation[] of state statutory law which [is] not cognizable on habeas review."  Curtis v. Fischer, 387 F. Supp. 2d 218, 225 (W.D.N.Y. 2005) (citing Estelle, 502 U.S. at 67-68, 112 S. Ct. at 480).

In the instant case, Rincon alleges he was erroneously adjudicated a second-felony offender, because the prosecution did not submit proof of Rincon's predicate felony conviction. Since this claim challenges the state-law procedure for determining second-felony offender status, as described in CPL § 400.21(2), Rincon's claim is not cognizable on habeas corpus review.  Id.

*D. Excessive Sentence*

The Second Circuit has explained that, in the habeas corpus context, "[n]o federal constitutional issue is presented where . . . the sentence [imposed by a state court] is within the

range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992). Rather, "when a statute provides for punishment thought to be violative of the [Eighth] [A]mendment the constitutionality of the statute itself must be attacked." United States v. Dawson, 400 F.2d 194, 200 (2d Cir. 1968).

The petitioner maintains his sentence is excessive because he was sentenced to "8 years to life on the A-[II] Felony." However, the petitioner has been resentenced to an eight-year determinate term of imprisonment for his A-II felony conviction, and the petitioner does not indicate, in his habeas corpus petition, that he wishes to challenge his determinate sentence or the constitutionality of the statute under which he received that sentence. Since Rincon is no longer subject to the indeterminate sentence challenged in his habeas corpus petition, the petitioner's challenge to his indeterminate sentence is moot.[2]

### IV. RECOMMENDATION

For the reasons set forth above, I recommend that Rincon's petition for a writ of habeas corpus be denied.

### V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff,

---

[2] Even if the Court were to assume, arguendo, that the petitioner seeks to challenge his determinate eight-year term of imprisonment as excessive, this claim is unexhausted; the petitioner's appeal challenging the length of his determinate sentence is pending before the New York State Supreme Court, Appellate Division, First Department.

500 Pearl Street, Room 1340, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York  
      April 10, 2009

Respectfully submitted,

*Kevin Nathaniel Fox*  
KEVIN NATHANIEL FOX  
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Hector Rincon  
Thomas B. Litsky, Esq.